# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

**Carlos L. Rosario Ramos, et al.,**

  Plaintiffs

  v.

**The Municipality of Río Grande, et al.,**

  Defendants.

CIVIL NO. 18-1050 (PG)

## OPINION AND ORDER

Before the court is the motion to dismiss filed by the defendants Municipality of Río Grande (henceforth "Municipality"), Hon. Angel B. González Damudt (henceforth "González-Damudt"), Rey O. Caraballo Rodríguez (henceforth "Caraballo-Rodríguez"); Leysla Ortiz Sánchez (henceforth "Ortiz-Sánchez"), Jose A. Adorno Aponte (henceforth "Adorno-Aponte"), and Evelyn González Robles (henceforth "González-Robles") (collectively as "Defendants"). See Docket No. 18. In their motion, Defendants request the dismissal of this case arguing that plaintiffs Carlos L. Rosario Ramos (henceforth "Rosario-Ramos"), Ivelisse Rosario Méndez (henceforth "Rosario-Méndez"), and Ricardo Torrens Osorio (henceforth "Torrens-Osorio") (collectively as "Plaintiffs") failed to state a claim upon which relief can be granted. Plaintiffs filed a timely response to said motion (Docket No. 27), to which Defendants have not replied. After considering the parties' pleadings and the applicable law, Defendants' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

On January 31, 2018, Plaintiffs filed the present complaint against the Municipality and the other individual Defendants in their official and personal capacities pursuant to the Civil Rights

Act of 1866, 42 U.S.C. § 1983, for violations to their rights under the First Amendment to the United States Constitution. The complaint also includes claims for damages under Article 1802 of Puerto Rico's Civil Code, P.R. LAWS ANN. tit. 31, § 5141. In sum, plaintiffs Rosario-Ramos and Rosario-Méndez allege that Defendants violated their First Amendment rights by retaliating against them after having made constitutionally-protected public expressions.

Specifically, on August 3, 2009, Rosario-Ramos started work as a heavy equipment driver under a temporary contract with the Public Works Department of the Municipality of Río Grande. See Docket No. 1 at page 2. On September 25, 2016, Rosario-Ramos wrote a Facebook message stating: "Populares de Río Grande with Davis [sic] Acosta, (Popular Party Members with David Acosta)." Id. Through this message, Rosario-Ramos changed his political affiliation from the Popular Democratic Party (henceforth "PDP") to the New Progressive Party (henceforth "NPP"). See id. The next day, Mayor González-Damudt purportedly ordered the PDP administration of Río Grande to commence a program of persecution and discrimination against Rosario-Ramos. Said pattern of discrimination by co-defendants Mayor González-Damudt, Caraballo-Rodríguez, and Ortiz-Sánchez culminated with Rosario-Ramos' termination on January 31, 2017, even though he allegedly had a perfect performance and track record, and Mayor González-Damudt had promised him on July 2016 that he would be reclassified as a regular permanent employee. See id.

On the other hand, on July 19, 2013, Rosario-Méndez began to work as a temporary employee in the Purchasing Office of the Municipality of Río Grande. During her tenure as a purchasing officer, Rosario-Méndez dealt with several irregularities perpetrated by Mayor González-Damudt and the special assistant to the mayor, co-defendant Adorno-Aponte. Specifically, they purportedly ordered Rosario-Méndez to purchase materials using public

funds for the private home of Attorney Noemí Caraballo López and a tire for a private truck. See id. at 3-4. At an undisclosed date, Rosario-Méndez received a telephone call from a radio commentator, José Cruz Jiménez (henceforth "Cruz-Jiménez"), requesting information about the use of public municipal funds for private use and she felt compelled to tell the truth. See id. at 4. Cruz-Jiménez made the information public, and he subsequently filed several still-pending complaints against the Municipality of Río Grande, Mayor González-Damudt and other municipal officers for the use of public municipal funds for private use.

At some point on September 2016, Adorno-Aponte allegedly told another purchasing agent, Elizabeth Sánchez, "that by orders from the top (referring to Mayor González-Damudt), Ivelisse Rosario Méndez would not perform any work, and no telephone calls could be received by her at work." Id. Subsequently, on September 29, 2016, co-defendant Adorno-Aponte demoted Rosario-Méndez within the Purchasing Office by eliminating some of her duties. See id. Additionally, on October and December 2016, Rosario-Méndez provided, under oath, information on the illegal use of private funds to Justice Department investigators. As a result of these events, Rosario-Méndez was not assigned any work from September 2016 until December 31, 2016, when Adorno-Aponte resigned and was replaced by co-defendant González-Robles, who began to assign Rosario-Méndez "irrelevant jobs" once every one or two weeks. This situation continued until she was terminated on August 31, 2017. See id. at 5-6.

Additionally, Torrens-Osorio, conjugal partner of Rosario-Méndez, claims damages under Puerto Rico's Torts statute for the persecution and discrimination that he purportedly suffered in his workplace at the Public Works Department of the Municipality of Rio Grande due to his wife's public interest expressions. See Docket No. 27 at pages 7-8.

Because of the events outlined above, Plaintiffs filed the present complaint requesting compensatory and punitive damages of no less than $300,000 for Rosario-Ramos, $300,000 for Rosario-Méndez, $50,000 for Torrens-Osorio, and a final $50,000 for their conjugal partnership. See id. at 9. Furthermore, Plaintiffs request equitable relief in the form of a permanent injunction ordering Defendants to reinstate plaintiffs Rosario-Ramos and Rosario-Méndez at their previous positions, as well as any attorney's fees, costs and expenses incurred in connection to the present action. See id. at 9-10.

## II. STANDARD OF REVIEW

When ruling on a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a district court must "accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir. 1998)). Even though detailed factual allegations are not necessary for a complaint to survive a motion to dismiss, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Those nonconclusory factual allegations that the court accepts as true must be sufficient to give the claim facial plausibility. See Quiros v. Muñoz, 670 F.Supp.2d 130, 132 (D.P.R. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556).

## III. DISCUSSION

On August 23, 2018, Defendants filed a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).[1] Each of Defendants' arguments for dismissal will be discussed in turn.

*A. Defendants' Argument that Plaintiffs' Claims are Duplicative*

Plaintiffs Rosario-Ramos and Rosario-Méndez request injunctive and monetary relief under 42 U.S.C. § 1983,[2] contending that they have been deprived of their First Amendment rights. In their motion to dismiss, Defendants request the dismissal of all claims brought against co-defendants Mayor González-Damudt, Caraballo-Rodríguez, Ortiz-Sánchez, Adorno-Aponte, and González-Robles in their official capacities. In sum, they contend that "suing the mayor of the Municipality of Río Grande or any other official in their official capacity while the Municipality of Río Grande is being included as a defendant is redundant and unnecessary." Docket No. 18 at page 14.

Defendants' argument is correct, as "[w]hen a municipality is sued directly, claims against municipal employees in their official capacities are redundant and may be dismissed." Diaz-Garcia v. Surillo-Ruiz, 13-cv-1473-FAB, 2014 WL 4403363 at *5 (D.P.R. Sept. 8, 2014). See Trafford v. City of Westbrook, 256 F.R.D. 31, 33 (D.Me. 2009) (explaining how "an official capacity claim is not necessary when a Section 1983 claim is brought against a *municipality*"); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (explaining that "[t]here is no longer a need

---

[1] Rule 12(b)(6) enables a party to present as a defense that the other party has failed "to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).
[2] Section 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

to bring official-capacity actions against local government officials, for under *Monell*, local government units can be sued directly for damages and injunctive or declaratory relief") (referencing Monell v. Dep't. of Soc. Servs. of N.Y., 436 U.S. 658 (1978)). Plaintiffs failed to distinguish how the relief that they may obtain from their official capacity claims against the individual defendants is any different from that which they may obtain through their § 1983 claims against the Municipality of Río Grande. Thus, this court finds those claims are indeed duplicative and the motion to dismiss all claims against co-defendants Mayor González-Damudt, Caraballo-Rodríguez, Ortiz-Sánchez, Adorno-Aponte, and González-Robles in their official capacities is hereby **GRANTED**.

*B. Defendants' Claim that the Municipality of Rio Grande is Immune to Punitive Damages*

Defendants also contend that municipalities are immune from punitive damages pursuant to 42 U.S.C. § 1981(a)(b)(1)[3] and applicable case law, therefore Plaintiffs' claim for punitive damages against the Municipality must be dismissed with prejudice. See Docket No. 18 at page 23.

The Supreme Court held in City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981), that "considerations of history and policy do not support exposing a municipality to punitive damages for the bad-faith actions of its officials." Id. at 271. However, as admitted by the Defendants themselves, "[p]unitive damages may be awarded under § 1983 against a state or municipal officer **in her individual capacity**." Docket No. 18 at page 23 (emphasis added). See Powell v. Alexander, 391 F.3d 1, 15 (1st Cir. 2004) (stating that "[p]unitive damages may be

---

[3] Section 1981(a)(b)(1) states that "[a] complaining party may recover punitive damages under this section against a respondent (**other than a government, government agency or political subdivision**) if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981(a)(b)(1) (emphasis added).

awarded under 42 U.S.C. § 1983 only where 'the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'") (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Thus, Plaintiffs cannot claim punitive damages against the Municipality, and Defendants' motion to dismiss those claims for punitive damages against the Municipality of Río Grande is hereby **GRANTED**.

*C. Rosario-Ramos' Claim of Political Discrimination*

To make a prima facie case of political discrimination, Plaintiffs must show that "(1) the plaintiff and the defendant belong to opposing political affiliations; (2) the defendant has knowledge of the plaintiff's affiliation; (3) a challenged employment action occurred; and (4) political affiliation was a substantial or motivating factor behind the challenged employment action." Lopez-Rosado v. Molina-Rodriguez, No. 11-cv-2198-JAG, 2012 WL 4681956 at *4 (D.P.R. Sept. 28, 2012) (quoting Juarbe-Velez v. Soto-Santiago, 558 F.Supp.2d 187, 199 (D.P.R. 2008)).

Although Plaintiffs, at the motion to dismiss stage, do not need to present sufficient facts to establish a prima facie case of political discrimination, "the elements of a prima facie case may be used as a prism to shed light upon the plausibility of the claim." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 54 (1st Cir. 2013). Furthermore, "[t]here need not be a one-to-one relationship between any single allegation and a necessary element of the cause of action. What counts is the 'cumulative effect of the [complaint's] factual allegations.'" Id. at 55 (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).

When applying the above test to the totality of the facts alleged in Plaintiffs' complaint, it can be inferred that Rosario-Ramos has presented a plausible claim of political discrimination.

In his complaint, Rosario-Ramos presented three non-conclusory factual allegations, to wit: 1) that on September 25, 2016 he wrote a Facebook message implying that he was a former PDP affiliate who now supported the NPP party; 2) on September 26, 2016 the PDP administration of Río Grande was ordered by Mayor González-Damudt to persecute him, and 3) that his contract was not renewed by the PDP administration of the Municipality of Río Grande on January 31, 2017, subsequent to that Facebook post. Based on these non-conclusory facts, the court can construe that Rosario-Ramos and the Defendants are plausibly affiliated with opposing political parties, as the former prefers the NPP whereas the latter belong to the PDP. Additionally, the facts contained in Plaintiffs' complaint, when taken as true, point to the conclusion that Rosario-Ramos was subject to an adverse employment action when his temporary contract was not renewed by the Defendants on January 31, 2017. See Docket No. 1 at page 2. See also Rutan v. Republican Party of Illinois, 497 U.S. 62, 72 (1990) (explaining how the government may not rely on certain reasons to deny a person a valuable government benefit, even if he has no right to it, for example: "[i]*t may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech*") (quoting Perry v. Sindermann, 408 U.S. 593, 596-98 (1972)).

Rosario-Ramos does not allege any "discrete factual events" showing that the individual Defendants were aware of his political beliefs. See Ocasio-Hernandez, 640 F.3d at 14-15.[4] However, "[t]he relevant question for a district court in assessing plausibility is not whether the complaint makes any particular factual allegations but, rather, whether 'the complaint warrant[s] dismissal because it failed *in toto* to render plaintiffs' entitlement to relief

---

[4] Examples of such "discrete factual events" include: "(1) that a plaintiff was asked by defendants about the circumstances relating to how the plaintiff obtained his or her job; (2) that the clerical staff directly asked about a plaintiff's political affiliations; and (3) that employees knew about and frequently discussed the political affiliations of their co-workers." Aguiar-Serrano v. Puerto Rico Highways and Transp. Authority, 916 F.Supp.2d 223, 230 (D.P.R. 2013).

plausible.'" <u>Rodriguez-Reyes v. Molina-Rodriguez</u>, 711 F.3d 49, 55 (1st Cir. 2013). This court finds that it is certainly plausible that the Defendants knew of Rosario-Ramos' Facebook message announcing his support of the NPP party, taking into account that Facebook is a widely used social media platform, the speed at which information can spread across the relatively small population of the Municipality of Río Grande,[5] as well as Rosario-Ramos' contention that Mayor González-Damudt ordered a campaign of discrimination against him the very next day after the announcement was made.

Rosario-Ramos does not provide any particular facts hinting at what the Defendants' continuous acts of persecution, harassment and discrimination consisted of, other than the fact that he was terminated on January 31, 2017. <u>See</u> Docket No. 1 at page 2. Nonetheless, this court can infer the plausible existence of a causal link between the Defendants' knowledge of Rosario-Ramos' political affiliation and their subsequent decision to terminate him. <u>See</u> <u>Rodriguez-Reyes</u>, 711 F.3d at 56 (reminding that at the motion to dismiss stage "plaintiffs, for pleading purposes, need not *establish* this element; the facts contained in the complaint need only show that the claim of causation is plausible"). The alleged timeline of events is once again instructive here, as the Facebook message was published on September 25, 2016 and Rosario-Ramos was terminated on January 31, 2017, shortly after the general elections in November. As such, it is plausible that Rosario-Ramos' political affiliation was a substantial or motivating factor in the Defendants' decision to terminate his contract.

---

[5] It has been previously held that "[w]here there exists a relatively small community where most everyone knew who everyone else was and political affiliations were common knowledge . . . a reasonable jury could conclude that Defendant knew of Plaintiff's political affiliations." <u>Davila-Torres v. Feliciano-Torres</u>, 924 F.Supp.2d 359, 371 (D.P.R. 2013) (quoting <u>Torres-Santiago v. Municipality of Adjuntas</u>, 693 F.3d 230, 237 (1st Cir. 2012)); <u>See</u> <u>also</u> <u>Diaz-Garcia v. Surillo-Ruiz</u>, 113 F.Supp.3d 494, 517 (D.P.R. 2015).

Here, Rosario-Ramos has alleged sufficient facts which, if taken in their entirety and in the light most favorable to his argument, renders his claim of political discrimination plausible. Consequently, Rosario-Ramos stated a claim upon which relief can be granted, and the court hereby **DENIES** the Defendants' motion to dismiss his claims for equitable relief and compensatory damages against the Municipality and Mayor González-Damudt, Caraballo-Rodríguez, and Ortiz-Sánchez in their personal capacities.

*D. Ivelisse Rosario Méndez' Claim of Free-Speech Retaliation*

Public employees retain their First Amendment right to speak on matters of public concern. See Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007). Nevertheless, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services." Garcetti v. Ceballos, 547 U.S. 410, 418 (2006). In order to establish a claim of free-speech retaliation, "a plaintiff must show that [s]he spoke as a citizen on a matter of public concern, that [her] interest in speaking outweighed the government's interest, as [her] employer, in promoting the efficiency of the public services it provides . . . and that [her] speech was a substantial or motivating factor in [her] firing." Cruz v. Puerto Rico Power Authority, 878 F.Supp.2d 316, 324 (D.P.R. 2012) (quoting Rodríguez v. Municipality of San Juan, 659 F.3d 168, 180 (1st Cir. 2011)). Furthermore, "[i]f all three parts of the inquiry are resolved in favor of the plaintiff, the employer may still escape liability if it can show that 'it would have reached the same decision even absent the protected conduct.'" Decotiis v. Whittermore, 635 F.3d 22, 29-30 (1st Cir. 2011) (quoting Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 765-66 (1st Cir. 2010)).

Defendants' motion to dismiss solely attacks the plausibility of Rosario-Mendez' claim with respect to the first element. See Docket No. 18 at pages 21-22. Specifically, Defendants claim that, upon Rosario-Méndez' own admission, it was the radio commentator, José Cruz Jiménez, who made the public comments that allegedly provoked the Defendants' retaliatory conduct. Additionally, regarding Rosario-Méndez' declarations under oath before the Department of Justice, Defendants contend that she "makes no factual allegations regarding defendant's knowledge of it anytime before the Municipality took affirmative action to prevent further disclosure of Municipality's sensitive and confidential information." Id. at 22. In sum, Defendants contend that Rosario-Méndez failed to allege enough facts that would allow this court to infer that they knew that she was the source of the information revealed by Cruz-Jiménez.

This court rejects Defendants' argument, as it can be reasonably inferred from the nonconclusory facts alleged in Plaintiffs' complaint that Defendants could have plausibly known that Rosario-Méndez was the source of the information revealed by the radio host. In their original complaint, Plaintiffs established that it was co-defendant Mayor González-Damudt's special assistant and Rosario-Méndez' superior, co-defendant Adorno-Aponte, who ordered her to engage in the allegedly illegal conduct that she subsequently revealed to Cruz-Jiménez. See Docket No. 1 at pages 3-4. Furthermore, Plaintiffs allege that after the radio broadcast, Adorno-Aponte "told another purchasing agent, Elizabeth Sánchez, that by orders from the top (referring to the Mayor González-Damudt), Ivelisse Rosario Méndez would not perform any work, and no telephone calls could be received by her at work." Id. at 4. The final nail in Defendants' claim of ignorance was placed by the Defendants themselves, upon admitting in their motion to dismiss that the conduct that Rosario-Méndez complains of was

an "**affirmative action to prevent further disclosure of Municipality's sensitive and confidential information.**" Docket No. 18 at page 22 (emphasis added).

Based on the above, it can be reasonably inferred that Adorno-Aponte knew that Rosario-Méndez was the source of the information revealed by Cruz-Jiménez because Adorno-Aponte himself ordered her to engage in the acts that were revealed by the radio broadcast. Furthermore, the fact that Adorno-Aponte and Mayor González-Damudt ordered that Rosario-Méndez not be assigned work, coupled with the Defendants' admission that the Municipality took steps to prevent further disclosure of confidential information, leads to the plausible conclusion that they sought to prevent Rosario-Méndez from leaking *even more* information in the future. As a result, this court finds that Rosario-Méndez presented enough facts to establish the first element of a free-speech retaliation claim at this stage.

The second element, that Rosario-Méndez' interest in speaking outweighs the government's interest in preserving the efficiency of the workplace, is more than adequately met as the conduct that she revealed to Cruz-Jiménez, if true, consists of an illegal act that the government should have little to no interest in concealing. See Wagner v. City of Holyoke, 241 F.Supp.2d 78, 91 (D.Mass. 2003) (pointing out that "[a]s the Supreme Court has noted, speech on public issues is 'the essence of self-government' and 'occupies the highest rung of the hierarchy of First Amendment values'") (quoting Connick v. Myers, 461 U.S. 138, 145 (1983)); see also O'Connor v. Steeves, 994 F.2d 905, 915 (1st Cir. 1993) (holding that official misconduct is "a topic of inherent concern to the community").

The third element, that Rosario-Méndez' speech was a substantial motivation or factor in the termination of her contract, was also met as she presented a series of facts that renders her claims of discrimination and retaliation plausible. Specifically, Rosario-Méndez claims

Adorno-Aponte stripped her of some of her functions shortly after the radio broadcast. She was then assigned insignificant tasks after co-defendant González-Robles replaced Adorno-Aponte, culminating with her termination on August 31, 2017. These claims enable this court to infer that a causal relation could plausibly exist between Rosario-Méndez' statements to Cruz-Jiménez and Defendants' subsequent decision to terminate her contract. As a result, this court hereby **DENIES** Defendants' motion to dismiss Rosario-Méndez' claims for equitable relief and compensatory damages against the Municipality and Mayor González-Damudt, Adorno-Aponte, and González-Robles in their personal capacities.

### *E. Torrens-Osorio's local Torts claims*

Plaintiffs claimed that Torrens-Osorio, conjugal partner to co-plaintiff Rosario-Méndez, "has also been persecuted and discriminated because his wife made public interest expressions. He is treated as an enemy, given the worst jobs at the Municipality of Rio Grande where he works at the Public Works Department." Docket No. 1 at page 5. In light of this allegation, it is unclear whether Torrens-Osorio brings claims pursuant to § 1983 or Art. 1802 of Puerto Rico's Civil Code. This lack of clarity is demonstrated by the fact that the Defendants interpreted Torrens-Osorio's claim as one of political discrimination under § 1983 (Docket No. 18 at pages 11-12), while the Plaintiffs' opposition to the Defendants' motion to dismiss clarifies that Torrens-Osorio is actually claiming damages under Article 1802 of Puerto Rico's Civil Code. See Docket No. 27 at pages 7-8. As such, the Plaintiffs failed to clearly articulate the statutory basis pursuant to which Torrens-Osorio is claiming relief, and as a result the Defendants could not adequately defend themselves via their motion to dismiss.

In order to give Plaintiffs a chance to amend their complaint and clarify Torrens-Osorio's argument, this court will employ its *sua sponte* authority to convert Defendants' motion to

dismiss pursuant to Fed. R. Civ. P. 12(b)(6) into a motion for a more definite statement pursuant to Fed. R. Civ. P. 12(e).[6] See Carter v. Newland, 441 F.Supp.2d 208, 214 (D.Mass. 2006) (stating that when a complaint presents a plausible legal theory but "is so unclear that the opposing party cannot respond to the complaint or frame an answer, a court has the option of converting, *sua sponte*, a motion made pursuant to Fed. R. Civ. P. 12(b)(6) to a motion for a more definite statement under Fed. R. Civ. P. 12(e)"). The Plaintiffs should take this opportunity to clarify Torrens-Osorio's claims for damages pursuant to Article 1802 of Puerto Rico's Civil Code.[7] This court believes that a more definite statement as to Torrens-Osorio's claims will grant Defendants the opportunity to adequately respond.

In sum, this court hereby converts the present motion to dismiss Torrens-Osorio's claims into a motion for a more definite statement pursuant to Rule 12(e) and will allow the converted motion. The Plaintiffs have fourteen (14) days after notice of this order to file their amended complaint in accordance with this ruling. Failure to comply will result in the dismissal of Torrens-Osorio's claims.

## IV. CONCLUSION

Based on the above, the court **GRANTS** Defendants' motion to dismiss **WITH PREJUDICE** as to co-plaintiffs Rosario-Ramos and Rosario-Méndez' claims for punitive damages against the Municipality and all claims against defendants Mayor González-Damudt, Caraballo-Rodríguez, Ortiz-Sánchez, Adorno-Aponte, and González-Robles in their official

---

[6] Rule 12(e) provides in relevant part that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

[7] In order to recover damages under Article 1802 of Puerto Rico's Civil Code, Plaintiff must show: "*first*, proof of the reality of the damage suffered; *second*, a causal relation between the damage and the action or omission of another person; and *third*, said act or omission is negligent or wrongful." Sociedad Gananciales v. Gonzalez Padin Co., Inc., 17 P.R. Offic. Trans. 111, 125 (1986) (quoting Hernandez v. Fournier, 80 P.R.R. 94, 97 (1957)).

capacities. Additionally, the court **DENIES** Defendants' motion to dismiss as to co-plaintiffs Rosario-Ramos and Rosario-Méndez' claims for equitable relief and compensatory damages against the Municipality and Mayor González-Damudt, Caraballo-Rodríguez, Ortiz-Sánchez, Adorno-Aponte, and González-Robles in their personal capacities. Finally, Defendants' motion to dismiss Torrens-Osorio's claims is converted into a motion for a more definite statement and is **ALLOWED**. The court thus orders Plaintiffs to file a more definite statement of Torrens-Osorio's claims in compliance with this order within fourteen (14) days upon receiving notice of the same.

**IT IS SO ORDERED**.

In San Juan, Puerto Rico, February 22, 2019.

S/ JUAN M. PÉREZ-GIMÉNEZ
**JUAN M. PEREZ-GIMENEZ**
**SENIOR U.S. DISTRICT JUDGE**